FILED

2006 Aug-18  PM 02:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ALFRED ROBINSON,                    )
                                    )
        Plaintiff,                  )
                                    )
vs.                                 )      Civil Action No.  2:05-CV-01092-LSC
                                    )
LAFARGE NORTH AMERICA, INC.,        )
                                    )
        Defendant.                  )

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration defendant Lafarge North America, Inc.'s ("Lafarge") motion for summary judgment, which was filed on May 24, 2006.  (Doc. 28.)  Plaintiff Alfred Robinson has sued Lafarge for racial harassment, retaliation, and discrimination with respect to discipline, training, and his attempt at promotion under Title VII and 42 U.S.C. § 1981 ("§ 1981").  (Doc. 1.)  Lafarge has moved for summary judgment on all of Plaintiff's claims.  The issues raised in Lafarge's motion for summary judgment have been briefed by both parties and are now ripe for consideration.  Upon full consideration of the legal arguments and evidence

presented by the parties, Lafarge's motion for summary judgment will be granted in all respects.[1]

II.    Facts.[2]

Plaintiff Alfred Robinson, an African-American male, was hired by Blue Circle, Inc. ("Blue Circle"), a cement manufacturer, to work on the Labor Crew at its Roberta Plant in Calera, Alabama, on or around November 12, 1991. The Roberta Plant manufactures cement for distribution to Lafarge's customers through the gathering and processing of raw materials obtained from the quarry located at the plant. Mr. Robinson subsequently worked in the Mobile Shop, in the Control Room, and in the Quarry as an "Operator I."[3]

---

[1]Because Plaintiff has not submitted in opposition to summary judgment any legal argument or support for his claims of racial discrimination in training or discrimination/retaliation through being forced to perform unsafe duties (Doc. 34), the Court concludes that he has abandoned these claims under both Title VII and § 1981. *See, e.g.*, *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

[2]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[3]Mr. Robinson's career at the Roberta Plant, however, was not continuous. In 1994, he joined a strike and did not work at the Plant for three (3) years.

In 2001, Defendant Lafarge purchased the assets of Blue Circle and began operating the Roberta Plant that December.

Joe Wujcik became Quarry Manager at Lafarge in October 2003. Around that time, Mr. Robinson applied for a "Quarry Operator II" post, and Mr. Wujcik selected him for the position.  In March 2004, it was announced at a safety meeting that Lafarge had three openings for "Leadman." Plaintiff and five Caucasian employees applied for the Leadman positions. After interviewing the candidates, Mr. Wujcik, Mike Parrot (Quarry Supervisor), and Joey Archer (Quarry Coordinator) made recommendations to Plant Manager Doug Buchanan as to who they thought should be hired. Danny Frith, Phillip Patterson, and Bob Crow were selected.  Mr. Robinson contends that he was as qualified for the Leadman position as Mr. Frith, and more qualified than Mr. Patterson and Mr. Crow.  Mr. Robinson later filed a grievance with his union that alleged he was denied the position because of his race.

On or about July 13, 2004, Mr. Robinson was demoted from his Operator II position, disqualified from bidding on an Operator II position for two years, suspended without pay for seven days, and required to

participate in Lafarge's Employee Assistance Program.  Plaintiff alleges that this discipline was because of his race and in retaliation for his complaints of discrimination.   Lafarge contends that Mr. Robinson was disciplined because four co-workers reported that they saw him excessively spinning the tires on a 992G loader, and a subsequent investigation led Lafarge to conclude that Plaintiff had deliberately abused company equipment.  Mr. Robinson filed this action on May 26, 2005.

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by

showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.    Analysis.

A.    Hostile Work Environment.

Mr. Robinson alleges that he has been subjected to a racially hostile

work environment at Lafarge.   Lafarge contends that Plaintiff cannot establish a prima facie case of harassment because the racial incidents alleged by Mr. Robinson  are not sufficiently severe and pervasive under the law.

In order to establish a hostile work environment claim under Title VII and § 1981, a plaintiff must show his "workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment.'"  *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citing *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986)); *Shields v. Fort James Corp.*, 305 F.3d 1280, 1282 (11th Cir. 2002).   To survive summary judgment, Mr. Robinson must present sufficient evidence that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee, such as race; (4) the harassment was sufficiently severe and pervasive to alter the terms and conditions of employment and create an abusive working environment; and (5) the employer is responsible for such environment under either a theory of

vicarious or direct liability.  *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).  While "claims of employment discrimination . . . present fact intensive issues[,]. . . motions for summary judgment or judgment as a matter of law are appropriate to 'police the baseline for hostile environment claims.'" *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244 (11th Cir. 1999)(en banc)(quoting *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264 n.8 (5th Cir. 1999)).

In support of his hostile environment claim, Mr. Robinson asserts the following: (1) in or around May 2001, a co-worker, Alan Terrell said to Otis Hill, an African-American, "I don't like niggers"; (2) in August or September 2005, co-worker Alan Terrell responded to Plaintiff's comment over the company radio that "it won't be long now," with the statement, "What did the monkey say when his tail got cut off?  It won't be long now"; and (3) Plaintiff discovered the letters "KKK" written on a company bathroom stall wall in January 2006.[4]  (Doc. 34 at 26, 41.)

_____

[4]The Court rejects Plaintiff's contention that the "Defendant has a history of racial incidents at the Roberta Facility" (Doc. 34 at 43) as a conclusory statement unsupported by admissible evidence.  The Court also does not discuss Plaintiff's allegation regarding Caucasian employees igniting an acetylene balloon in a room with African-American employees, because the Court agrees with the defendant that the evidence underlying this account is inadmissible hearsay and the declarant lacked

Assuming Mr. Robinson subjectively perceived his work environment to be racially abusive, he must nonetheless establish that a reasonable person would find the environment to be racially hostile or abusive.  *Harris*, 510 U.S. at 21-22.  In evaluating whether harassing conduct is objectively severe and pervasive, the Court must consider the totality of the circumstances, including: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Miller*, 277 F.3d at 1276; *see also Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1247-48 (11th Cir. 2004).

Mr. Robinson has not presented evidence of any physically threatening or humiliating behavior, or shown that the cumulative effect of the alleged incidents unreasonably interfered with his job performance.  Clearly, the conduct alleged is not frequent; Plaintiff has pointed to only three incidents

---

personal knowledge of the incident.  However, even if the Court considered the account of the balloon incident (for which Plaintiff was not present) admissible, it would not change its determination that Plaintiff has failed to adduce substantial evidence of racially hostile or abusive conduct that is sufficiently severe or pervasive to establish a hostile environment claim.

in a time period of over four years.  Moreover, the alleged conduct is not grave enough to overcome its infrequency.[5]  "Racial slurs spoken by co-workers ha[ve] to be so 'commonplace, overt and denigrating that they create[ ] an atmosphere charged with racial hostility.'" *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1521 (11th Cir. 1995) (quoting *EEOC v. Beverage Canners, Inc.*, 897 F.2d 1067, 1068 (11th Cir. 1990)).

In short, Mr. Robinson has not adduced sufficient evidence to convince a reasonable jury that he suffered harassment that was sufficiently severe and pervasive to alter the terms and conditions of employment and create an abusive working environment.  *See, e.g., Barrow v. Georgia Pacific Corp.*, 144 Fed. Appx. 54 (11th Cir. 2005) (unpublished opinion) (holding that employee failed to establish that alleged racial harassment, including symbols and slurs, was sufficiently severe and pervasive to alter his working conditions).  Therefore, Plaintiff's hostile environment claim will be dismissed.

---

[5]The Court also notes that the first incident, Mr. Terrell's remark to Mr. Hill in 2001, occurred outside Mr. Robinson's presence and before Lafarge took control of operations at the Roberta Plant.  With regard to the last incident, there is no evidence who wrote "KKK" on the bathroom stall at Lafarge, but when it was reported—which Plaintiff did not do immediately, the company promptly sealed the stall and painted over the graffiti.

B.      Racial Discrimination in Promotion.

Mr. Robinson claims that Lafarge illegally discriminated against him based on his race, in violation of Title VII and § 1981, because he was denied promotion to a "Leadman" position in or around April 2004.  It is undisputed that Plaintiff was the sole African-American to apply for one of three vacant "Leadman" positions.  After interviewing a total of six applicants, however, Lafarge selected only Caucasian employees: Danny Frith, Bob Crow, and Phillip Patterson, for the posts.   Mr. Robinson argues that he was as qualified or more qualified than these three men.  (*Id*. at 16-17, 29.)

Because Plaintiff has not asserted that he has direct evidence of discrimination with regard to his attempt at promotion, we analyze his claim using the analytical framework established by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1333 (11th Cir. 1998).  First, the plaintiff must establish a prima facie case of discrimination.  "To establish his prima facie case of discriminatory failure to promote, [Mr. Robinson] must show that (1) he was in a protected group; (2) he was not given the promotion; (3) he was qualified for the position and (4) someone outside of

the protected group was given the position." *Id.* (citing *Coutu v. Martin County Bd. of County Commiss'rs*, 47 F.3d 1068, 1073 (11th Cir. 1995)).  The prima facie case, once established, creates a presumption of discrimination, which the employer must rebut with legitimate, nondiscriminatory reasons for the employment action(s) at issue.  "If the employer successfully rebuts the presumption, the burden shifts back to the plaintiff to discredit the proffered nondiscriminatory reasons by showing that they are pretextual." *Standard*, 161 F.3d at 1331.

Lafarge does not dispute that Mr. Robinson can establish a prima facie case of discrimination, but the company argues that he cannot rebut Lafarge's legitimate, non-discriminatory reason for selecting other individuals for the three available positions: the company chose those individuals it determined were the most qualified.  (Doc. 28, attach. 1 at 5, 19.)  Lafarge has presented the Court with evidence that Mr. Frith, Mr. Patterson, and Mr. Crow were selected as more qualified, in part, for the following reasons:

- Mr. Frith had worked at the Roberta Plant for approximately twenty-eight years.  At the time of his application, he had

around one and a half years of experience as an Operator I.  Mr.
Frith's supervisors believed he was an excellent employee who
understood production and quality needs, and they concluded he
performed well in his interview and demonstrated he was able
to make logical decisions.  (Wujcik Decl. ¶ 11.)

- Mr. Patterson had worked in the Roberta Plant quarry for
  approximately ten years.  At the time of his application, he had
  around two years of experience as an Operator II.   His
  supervisors concluded that he demonstrated sound judgment and
  communication skills during his interview.  (*Id*. ¶ 12.)

- Mr. Crow had worked in the mining industry for over forty years
  and had ten years of experience at the Roberta Plant.  He also
  had a degree in Mining engineering.  Although Mr. Crow never
  bid into an Operator II position, he frequently performed
  Operator II tasks.  His supervisors considered him to be one of
  the best equipment operators in the Quarry and concluded from
  his interview that he had the necessary communication and
  decision-making skills for the Leadman position.  (*Id*. ¶ 13.)

Plaintiff concedes that Defendant has met its burden of producing legitimate, non-discriminatory reasons for its decision.  (Doc. 34 at 30.) "Faced with these legitimate, nondiscriminatory reasons, [Mr. Robinson] must now show that they are pretextual."  *Standard*, 161 F.3d at 1334.

As rebuttal, Mr. Robinson contends that he was better qualified than those selected for the Leadman positions because he had mobile shop experience, CC control room experience, a drafting certificate, and greater seniority than one of the selectees.  (Doc. 34 at 16-17.)  Mr. Robinson also takes issue with the fact that two of the promoted individuals had been disciplined in the past.[6]  (*Id*. at 6-7.)  The evidence shows that Plaintiff had experience as an Operator II for approximately six months at the time he applied for the Leadman position.  He has not asserted, nor is there evidence to support, that he had supervisory experience.  Moreover, the Quarry Manager testified that Mr. Robinson laughed throughout his interview, his responses lacked focus, and his answers frequently rambled. (Wujcik Decl. ¶ 14; Wujcik Depo. at 71; *see also* Archer Depo. at 76-77.)

---

[6]The Court notes that only one of the listed reprimands occurred since Lafarge took over operations of the Roberta Plant in 2001.

Since the U.S. Supreme Court's decision in *Ash v. Tyson Foods*, 126 S.

Ct. 1195 (Feb. 21, 2006), the Eleventh Circuit Court of Appeals has

reiterated its holding that when a plaintiff attempts to prove pretext

through differences in qualifications, that "plaintiff must show that the

disparities between the successful applicant's and [his] own qualifications

were 'of such weight and significance that no reasonable person, in the

exercise of impartial judgment, could have chosen the candidate selected

over the plaintiff.'" *Brooks v. County Comm'n of Jefferson County*, 446 F.3d

1160, 1163 (11th Cir. April 18, 2006) (quoting *Cooper v. S. Co.*, 390 F.3d

695, 732 (11th Cir. 2004), *cert. denied*, − U.S. −, 126 S. Ct. 478, 163 L. Ed.

2d 363 (2005)).   Upon review of the evidence presented to this Court,

Plaintiff has failed to meet this burden.   Mr. Robinson cannot defeat

summary judgment by simply quarreling with the wisdom of his employer's

decision when Lafarge has presented legitimate, non-discriminatory reasons

that might motivate a reasonable employer.  *Id.* (citing *Alexander v. Fulton

County*, 207 F.3d 1303, 1339 (11th Cir. 2000); *Chapman v. AI Transport*, 229

F.3d 1012, 1030 (11th Cir. 2000) (en banc)).   Because Mr. Robinson has not

adduced sufficient evidence to convince a reasonable jury that Lafarge's

reasons for not selecting him for the position of Leadman were pretext for race discrimination, summary judgment is due to be granted on this claim.

C.    Racial Discrimination in Discipline.

In July 2004, Lafarge suspended Plaintiff without pay for seven days, reassigned him to the position of Operator I, disqualified him from holding the position of Operator II for a period of two years, and required him to participate in the Employee Assistance Program.  Lafarge contends that it disciplined Mr. Robinson in this manner because the company concluded in good faith that he had deliberately abused company equipment.  Plaintiff argues that this discipline was discriminatory and a violation of both Title VII and § 1981.  He supports his argument with evidence that other non-minority employees at Lafarge were disciplined less severely when their actions resulted in damage to company equipment.

Mr. Robinson has not presented any direct evidence of racial discrimination; therefore, we turn to the *McDonnell Douglas* framework to analyze his disparate discipline claim.  *Standard*, 161 F.3d at 1331.  Lafarge contends that Plaintiff cannot establish a prima facie case of discrimination because he has no evidence that a similarly situated non-minority employee

engaged in misconduct "nearly identical" to that of Mr. Robinson.  (Doc. 28, attach. 1 at 24-25.)

As part of his prima facie case, Plaintiff "must show that his employer treated similarly situated employees outside his classification more favorably than [himself]." *Holyfield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citing *Coutu v. Martin Cty. Bd. of Cty. Comm'rs*, 47 F.3d 1068, 1073 (11th Cir.1995)).  "To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects."  *Id*; *see also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir.), *reh'g en banc denied*, 116 Fed. Appx. 257 (11th Cir. 2004).  "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Id*.  "The most important factors in the disciplinary contexts are the nature of the offenses committed and the nature of the punishments imposed." *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001), *cert. denied*, 535 U.S. 1013 (2002) (ellipses omitted).  "In order to

satisfy the similar offenses prong, the comparator's misconduct must be *nearly identical* to the plaintiff's in order 'to prevent courts from second-guessing employer's reasonable decisions and confusing apples with oranges.'" *Id.* (citing *Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999)) (emphasis added); *see also Burke-Fowler v. Orange County, Florida*, 447 F.3d 1319, 1323 n.2 (11th Cir. 2006) (reaffirming the "nearly identical" requirement despite one panel's conclusion that only "similar" misconduct is required).   It is "require[d] that the quantity and quality of the comparator's misconduct be nearly identical." *Maniccia*, 171 F.3d at 1368. "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Holyfield*, 115 F.3d at 1562.

Lafarge has presented evidence that Mr. Robinson was disciplined in July 2004 because the company concluded that Plaintiff operated a 992G loader in an abusive and destructive manner.  (Pl. Depo. at Def. Ex. 34.) Witnesses told management that Plaintiff appeared to be acting deliberately, he was loading hard and in a manner that hurt others,  and that rocks and/or sparks were flying six to eight feet behind the tires.

(Wujcik Decl. at Exs. 1-3.)  An examination of the equipment revealed an approximately eighteen-inch cut[7] in one tire and a wear-ring  from the tire chains.  (Wujcik Depo. at 13.)  The two front tires cost approximately $20,000 to replace.  (*Id*. at 11.)

Mr. Robinson argues that the following non-minority employees were disciplined less severely:

- In July 2003, Bob Crow damaged a buried pump discharge line, which threw a rock and broke a 988 loader windshield.  Mr. Crow was suspended for one day with pay.

- In 2004, J.W. Tucker drove a piece of equipment when the

---

[7]Plaintiff argues in his response memorandum that this cut was present before the alleged incident in June 2004.  "[O]ur inquiry is limited to whether the employer gave an honest explanation of its behavior."  *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).  Mr. Robinson has not presented any admissible evidence that the decisionmaker(s) in this matter knew that the cut was on the tire before June 2004. Moreover, Mr. Robinson was not disciplined for cutting the tire.  He was disciplined for abusing company equipment.  The cut in the tire was one piece of supporting evidence for management's conclusion regarding Plaintiff's actions.  The existence of a cut on the loader tire prior to June 2004 does not create a genuine issue of material fact.

Similarly, the conclusion of the State Department of Industrial Relations that there was no evidence at Plaintiff's hearing for unemployment benefits that he committed any act of misconduct does not create a genuine issue of material fact.  Lafarge did not appear at the hearing, and the Department's conclusions are not preclusive on this issue. Moreover, there is no evidence that the decisionmaker(s) in this case did not, in good faith, believe that Plaintiff engaged in the misconduct of which he was accused.  *See Curtis v. Teletech Customer Care Mgmt., Inc.*, 208 F. Supp. 2d 1231, 1245 (N.D. Ala. 2002).

brakes had overheated, and the brakes caught on fire.  Tucker was either suspended for one day or given a written warning.

- In 2004, Mr. Tucker drove over a railroad track at a high rate of speed, which bounced the machine and damaged the tracks.  As a result, Lafarge paid more than one thousand dollars to repair the railroad tracks, and Mr. Tucker was suspended for three days.

- Sometime in the past, Danny Miller got a boulder caught between the blade and tire on a machine, and he damaged the fuel tank because he continued to operate the equipment when he should have stopped.  The incident caused a couple of hundred dollars worth of damage and Mr. Miller received a written warning.

Lafarge contends that Plaintiff's alleged misconduct was not "nearly identical" to that of his proposed comparators because, while the employees' actions resulted in damage to company equipment, there is no evidence that any of the proposed comparators engaged in intentional or deliberate misconduct.  The Court agrees that Plaintiff has not adduced

sufficient evidence to convince a reasonable jury that non-minority employees were disciplined less severely for misconduct that was "nearly identical" to Mr. Robinson's alleged misconduct.  Although Plaintiff asserts that his punishment was "extreme," federal law "does not take away an employer's right to interpret its rules as it chooses and to make determinations as it sees fit under those rules." *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984).  Moreover, even if Plaintiff was able to establish a prima facie case of discrimination, he has not adduced substantial evidence to show that Lafarge's legitimate, non-discriminatory reason for its discipline was pretext for race discrimination. Therefore, summary judgment is due to be granted on Mr. Robinson's disparate discipline claim.

D.    Retaliation.

Finally, in his Complaint, Mr. Robinson contends that Lafarge has retaliated against him in violation of Title VII and § 1981 by (1) denying him a promotion to the position of Leadman, and (2) suspending and demoting him in July 2004, because he engaged in protected activity.

In order to establish a prima facie case of retaliation, a plaintiff must

show: "(1) that he engaged in statutorily protected expression; (2) that he suffered an adverse . . . action; and (3) that there is some causal relationship between the two events." *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997).[8]  Recently, the U.S. Supreme Court clarified that a plaintiff does not need to suffer employment-related adverse actions. Rather, federal anti-retaliation provisions encompass any employer actions that would be "materially adverse to a reasonable employee or job applicant." *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S. Ct. 2405, 2409 (2006).  There is no dispute that Mr. Robinson has suffered adverse actions sufficient to meet the second prong of his prima facie case with regard to both retaliation claims.

      1.    Denied Promotion.

Lafarge argues that it is entitled to summary judgment on Plaintiff's claim of retaliation through the denial of a promotion to Leadman because Mr. Robinson cannot establish the requisite causal relationship with his alleged complaints of discrimination.  To establish a causal connection, a

---

[8]While it is still an "open question" in this circuit whether the elements of a Title VII and § 1981 retaliation claim are the same, *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1120 n.10 (11th Cir. 2001), the parties in this case have analyzed these claims together and have not raised this as an issue for the Court to address.

plaintiff "need only show 'that the protected activity and the adverse action were not wholly unrelated.'" *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999) (quoting *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985)).  The plaintiff must also show that the decision-maker was aware of the protected conduct.  *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000) (quoting *Farley v. Nationwide Mut. Ins.*, 197 F.3d 1322, 1337 (11th Cir. 1999)).

Mr. Robinson, however, has failed to make any argument in his response to summary judgment that addresses his claim that he was denied a promotion to Leadman in or around April 2004 due to retaliation.  (Doc. 34 at 32-40.)  In his statement of facts, Plaintiff references a number of alleged complaints of discrimination that occurred prior to his application for a promotion, but many took place before Lafarge took control of the Roberta Plant and some are not supported by admissible evidence.  (*Id.* at ¶¶ 51-60.)  The alleged complaints that are closest in time to Plaintiff's denied promotion are those that occurred in December 2003.  (*Id.* ¶ 60.)  Without more, a four month gap in time between Plaintiff's alleged complaints of discrimination and his denied promotion is not sufficient

circumstantial evidence to establish a causal connection.   *Higdon v. Jackson*, 393 F.3d 1211, 1220-21 (11th Cir. 2004) (concluding that a three month temporal proximity, without more, "does not allow a reasonable inference of a causal relation"); *Wascura v. City of S. Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001) ("[T]hree and one-half month temporal proximity is insufficient to create a jury issue on causation."); *Maniccia v. Brown*, 171 F.3d 1364, 1370 (11th Cir. 1999) (citing *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997), for the proposition that a "4-month lag between protected activity and termination [is] not sufficient to justify an inference of causation").   Because Mr. Robinson has not indicated to the Court that there is any other reason to infer that his alleged complaints were the reason he was denied the Leadman position in April 2004, Lafarge is entitled to summary judgment on this claim.

   2. Discipline.

  With regard to Mr. Robinson's claim that he was suspended, demoted, and prohibited from promotion for two years in retaliation for his complaints of discrimination, Lafarge concedes that he can establish a prima facie case of retaliation.  However, the company argues that Plaintiff is unable to show

that its legitimate, non-discriminatory reason for the discipline is pretext for retaliation.  (Doc. 37 at 23.)

"Once a plaintiff has established a prima facie case [of retaliation], the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action."  *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (citing *Olmstead v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998); *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994)).  "The ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff."  *Id.* (citing *Olmstead*, 141 F.3d at 1460).

Lafarge asserts that Plaintiff was disciplined because of its good faith belief that he deliberately abused company equipment.  (Doc. 37 at 24.)  In support of his argument that Lafarge's reason for his demotion and suspension was pretext for unlawful retaliation, Mr. Robinson argues that his punishment was "extreme," "no other employee has been reprimanded in this manner," and the allegations of his misconduct were false.  (Doc. 34 at 33, 35.)

For the reasons set forth above in the Court's discussion of Plaintiff's claim of racial discrimination in discipline, this Court finds that Mr. Robinson has not adduced sufficient evidence to support his contention that Lafarge's legitimate, non-retaliatory reason for his suspension, demotion, and prohibition on promotion for two years was pretext for retaliation.[9]  Mr. Robinson has not proffered sufficient evidence to convince a reasonable jury that employees who have not complained of retaliation were disciplined less severely for misconduct that was "nearly identical" to Mr. Robinson's alleged misconduct.  There is no evidence that the decisionmaker(s) in this case did not believe Mr. Robinson engaged in the misconduct of which he was accused.  And, when an employer has given a legitimate, non-retaliatory reason for its decision to implement discipline, it is not the role of this Court to say whether it believes that discipline is "extreme" under the circumstances.  Therefore, this claim is also due to be dismissed.

---

[9]While Mr. Robinson does not discuss Mr. Buchanan's alleged statement that he was "getting tired of the 'D' word," (Doc. 34 at ¶ 62) in the context of his retaliation claims, the Court reviewed Plaintiff's deposition and concluded that Mr. Buchanan's alleged comments are not sufficient circumstantial evidence to justify a jury issue on this claim.  According to Mr. Robinson, this statement was made over five months after his suspension and demotion.  (Pl. Depo. at 423-28.)  And, there is no evidence that Mr. Buchanan's statement was in any way connected to the decision to discipline Mr. Robinson in July 2004.

V.     Conclusion.

For the reasons set forth above, Lafarge's motion for summary judgment is due to be granted in all respects.   A separate order in conformity with this opinion will be entered.

Done this <u>18th</u> day of <u>August 2006</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153